UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TRAVIS GOLDEN, | : | Case No. 2:23-cv-00637 |
| Plaintiff, | : | District Judge Michael H. Watson |
| vs. | : | Magistrate Judge Caroline H. Gentry |
| CORRECTIONAL OFFICER HUBNER, | : | |
| Defendant. | : | |

## ORDER AND
## REPORT AND RECOMMENDATION

Plaintiff Travis Golden filed this civil rights lawsuit under 28 U.S.C. § 1983 to challenge his treatment by correctional officers in a state prison. Plaintiff initially sued only the Ohio Department of Rehabilitation and Correction, which is not an entity subject to suit under Section 1983. (Complaint, Doc. No. 1.) Plaintiff then filed an amended complaint and named Correctional Officer Hubner and several John Does as Defendants. (Am. Complaint, Doc. No. 11, PageID 104 & 131.) Plaintiff is proceeding both *in forma pauperis* (i.e., he is excused from paying certain costs at all, and is permitted to pay the remaining costs over a period of time) and *pro se* (i.e., without the assistance of counsel).

This matter is before the undersigned United States Magistrate Judge to conduct the required initial screen of Plaintiff's Amended Complaint. For the reasons set forth below, the undersigned **ORDERS** that Plaintiff be allowed to proceed with some of his claims at this time and **RECOMMENDS** that his remaining claims be **DISMISSED**.

I.     **LEGAL STANDARDS**

   A.     **Requirement To Screen Plaintiff's Complaint**

Because Plaintiff is a prisoner who is seeking "redress from a governmental entity or officer or employee of a governmental entity," the Court must screen the Complaint to determine whether it, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. Prison Litigation Reform Act of 1995 ("PLRA") § 805 (codified at 28 U.S.C. § 1915A(b)); *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997) ("A district court is required to screen all civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is pro se, or is represented by counsel as the statute does not differentiate between various civil actions brought by prisoners").

The Court is also required to screen the Complaint because Plaintiff is proceeding *in forma pauperis*. Congress enacted 28 U.S.C. § 1915, the *in forma pauperis* statute, for the purpose of "lower[ing] judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 5, 31 (1992). However, "Congress recognized that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Id*. (internal quotations and citation omitted). Therefore, the Court must dismiss an *in forma pauperis* complaint to the extent it "determines that the action … (i) is frivolous or malicious, (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

2

### B. Determining That A Complaint Is Frivolous

A complaint is frivolous if the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams*, 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when the plaintiff claims a violation of a legal interest that clearly does not exist. *Neitzke*, 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of being irrational or 'wholly incredible.'" *Denton*, 504 U.S. at 32; *Lawler*, 898 F.2d at 1199. The Court need not accept as true any factual allegations that are "fantastic or delusional," *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010), or "clearly irrational or wholly incredible." *Ruiz v. Hofbauer*, 325 F. App'x 427, 429-30 (6th Cir. 2009).

### C. Determining That A Complaint Fails To State A Claim Upon Which Relief May Be Granted

The Court is also required to dismiss complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1). To avoid dismissal under this standard, the complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court must construe the complaint in plaintiff's favor, accept all well-pleaded factual allegations as true, and determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that

3

the "dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim under §§ 1915A(b)(1) and 1915(e)(20(B)(ii)"). Thus, the complaint must include factual allegations that are both ***well-pleaded*** and ***plausible***.

Factual allegations are well-pleaded if they are specific and support the plaintiff's claims. *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (courts need not accept "non-specific factual allegations and inferences"). "[A] legal conclusion couched as a factual allegation" is not well-pleaded and need not be accepted as true. *Twombly*, 550 U.S. at 555; *see 16630 Southfield Ltd. Partnership v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) ("[C]onclusory allegations … that the defendant violated the law" do not state a claim on which relief can be granted); *Frazier*, 41 F. App'x at 764 (6th Cir. 2002) (courts need not accept "unwarranted legal conclusions").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also 16630 Southfield Ltd. Partnership v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (internal quotations and citation omitted) ("[T]he sufficiency of a complaint turns on its factual content, requiring the plaintiff to plead enough factual matter to raise a plausible inference of wrongdoing."). Whether an inference is plausible "depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Iqbal*, 556 U.S. at 678.

4

### D. Liberal Construction Of *Pro Se* Complaints

This Court is required to liberally construe a *pro se* complaint and hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This standard may require "active interpretation in some cases [in order] to construe a *pro se* petition to encompass any allegation stating federal relief." *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985). Nevertheless, a *pro se* complaint must adhere to the "basic pleading essentials" and the Court should not have to guess at the nature of the claim asserted." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Instead, the complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

### E. Claims Brought Under Section 1983

Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983. Section 1983 authorizes a cause of action "against any person who, under color of state law, 'subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution.'" *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To state a cause of action under Section 1983, a plaintiff must allege: "(1) a deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008).

5

## II. PARTIES, ALLEGATIONS AND CLAIMS

### A. Parties

Plaintiff is a state prisoner who is serving a sentence imposed by a state court. (Am. Complaint, Doc. No. 11, PageID 116.) When the alleged events described in the Amended Complaint occurred, Golden was incarcerated at the Madison Correctional Institution ("Madison CI"). (Doc. Nos. 11 and 11-1, PageID 118.) Plaintiff was later transferred to a different correctional facility and no longer resides at Madison CI.[1]

Plaintiff appears to be suing Correctional Officer Hubner and several John Does. In the caption of his Amended Complaint, Plaintiff identified the Defendant(s) as "Defendant Doe 'Correctional Officer Hubner' et. al. Defendant(s) (Reserved right to name unknown defendants later)." (Doc. No. 11, PageID 104.) On the first page of the Amended Complaint, Plaintiff identified the Defendant as "Defendant Doe 'C/O Hubner.'" (*Id*.) Elsewhere in the Amended Complaint, Plaintiff referred to "Defendant Doe 'Correctional Officer Hubner (C/O Hubner)' and several unknown, and yet to be named as defendants in this live controversy [sic]." (*Id*. at PageID 117.)

In an abundance of caution, the undersigned Magistrate Judge will construe the *pro se* Complaint liberally as asserting claims against a Madison CI Officer with the last name of Hubner <u>and</u> approximately fifteen John Doe Defendants.[2] The Clerk of Court is

---

[1] *See* "Offender Details" on the ODRC's website, available at https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A410118 (last visited Nov. 6, 2024).

[2] Designation of a John Doe defendant is disfavored but "permissible when the identity of the alleged defendant is not known at the time the complaint is filed and plaintiff could identify defendant through discovery." *Robinson v. Doe*, No. 1:07-cv-729, 2009 WL 650383, at *2 (S.D. Ohio March 10, 2009) (collecting cases).

**DIRECTED** to list Correctional Officer Hubner on the docket as the lead defendant, remove his designation as a "Doe" Defendant, and add fifteen "John Doe" Defendants to the docket.

In his Amended Complaint, Plaintiff did not expressly state whether he is suing Defendants in their official capacities, individual capacities, or both capacities. In such a situation, this Court must apply a "course of proceedings" test to determine the capacity in which each defendant has been sued. *Moore v. City of Harriman*, 272 F.3d 769, 773 (6th Cir. 2001) (en banc). If the complaint is ambiguous, then the Court must assume that it asserts only official-capacity claims "unless the 'course of proceedings' has clarified that the plaintiff seeks to hold the defendants personally liable." *New Alb. Main St. Props. v. Watco Cos., LLC*, 75 F.4th 615, 632 (6th Cir. 2023).

The course of proceedings test requires the Court to examine the pleadings and determine whether Defendants were placed on notice of Plaintiff's intent to hold them personally liable for damages. *Moore*, 272 F.3d at 773. Relevant factors include "the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response . . . ." *Id*. at 772 n.1.

After applying the course of proceedings test, the undersigned concludes that the Amended Complaint provides notice of Plaintiff's intent to hold Defendants personally liable for their alleged actions. Plaintiff seeks compensatory, nominal and punitive damages in the amount of $330 million. (Doc. No. 11, PageID 117-18.) Plaintiff alleges that Defendant Hubner is an intentional tortfeasor who assaulted him, acted in bad faith and is not entitled to qualified immunity. (*Id*. at PageID 127-30.) Plaintiff asserts similar

7

allegations against the John Doe Defendants, with the exception that some of them are deemed to be negligent tortfeasors. (*Id*. at PageID 130-40.)

Accordingly, the undersigned will construe Plaintiff's Amended Complaint as asserting claims against Defendant Hubner and the remaining John Doe Defendants in their individual capacities only.[3] The Clerk of Court is DIRECTED to note on the docket sheet of this case that Defendant Hubner and the John Doe Defendants are being sued in their individual capacities.

### B. Plaintiff's Allegations

The following factual allegations are taken from the Amended Complaint and are considered to be true for purposes of this initial screen only.

#### 1. February 16, 2021 Incident (attack by officers)

On February 16, 2021, Madison CI Correctional Officer Hubner initiated a verbal altercation with Plaintiff. (Doc. No. 11, PageID 118.) The dispute "escalated to the point where [Hubner] decided to lock [Plaintiff] into his cell." (*Id*.) At some point, Plaintiff "took advantage of [an] opportunity to run out of his cell and surrender in a peaceful manner." (*Id*.) Plaintiff apparently then knelt or lay down on the ground. (*Id*.)

Seeing Plaintiff outside of his cell, Officer Hubner called for backup, "got down on top of" Plaintiff, ordered him not to move, and had him "completely subdued." (Doc.

---

[3] If Plaintiff had sued Defendants in their *official* capacities, then the undersigned would recommend that all official capacity claims be dismissed. *See Anderson v. Ohio Dep't of Rehab. & Correction,* No. 2:16-cv-1009, 2016 WL 6778396, at *2 (S.D. Ohio Nov. 16, 2016), *report and recommendation adopted*, 2017 WL 2493146 (S.D. Ohio June 8, 2017) ("claims for damages asserted against state employees in their official capacities cannot proceed in a federal court because such claims are deemed to be claims against the State" and the State is immune from suit and not properly sued under Section 1983).

No. 11, PageID 118.) However, Hubner did not handcuff Plaintiff. (*Id*.) Instead, Hubner saw that the other officers were not taking any action against Plaintiff and announced that "[Golden] is not getting out of here, without getting his ass beat." (*Id*.) Someone else then sprayed Plaintiff, who had been subdued, in the face with mace or pepper spray. (*Id*.)

Plaintiff emphasizes that Officer Hubner refused to close the handcuffs around his wrists immediately after subduing him. (Doc. No. 11, PageID 119, 121-22 & 127-28.) Although the significance of this allegation is not explained, one interpretation is that Plaintiff believes that Hubner thought that he could legitimately continue to use force against him until Plaintiff was handcuffed. Hubner's alleged delay in handcuffing Plaintiff appears to be the main basis of Plaintiff's claims against Hubner.

Hubner remained seated on Plaintiff's back for at "least one full minute" while refusing to secure the handcuffs. (Doc. No. 11, PageID 119-20.) Plaintiff alleges that Hubner refused to handcuff him until other officers caused additional injuries. (*Id*.) One or more individuals punched Plaintiff in the left temple and deployed a full canister of mace in his face. (*Id*. at PageID 120.) But Hubner "just [sat] there waiting for more." (*Id*.)

Believing that "Hubner was not going to be happy" until the other officers killed him, Plaintiff yelled out his mother's telephone number and pleaded for "anybody in the vicinity to call her and tell her to call the Ohio State Highway Patrol and tell them that the prison guards were trying to kill [him]." (Doc. No. 11, PageID 121.) At that point, an unnamed "Superior Officer" who had been watching the incident finally ordered Hubner to clasp the handcuffs around Plaintiff's wrists. (*Id*.)

9

Plaintiff was escorted to the prison's infirmary. (Doc. No. 11, PageID 122.) On the way, an unknown officer punched Plaintiff in the jaw for no reason. (*Id*.) When he arrived, someone punched him in the right eye. (*Id*.) Someone also threatened him, saying that they had better not hear about Plaintiff writing any more informal complaints, because he would not be so lucky next time. Then, someone knocked Plaintiff out (i.e., rendered him unconscious). (*Id*. at PageID 123.) Plaintiff claims that approximately fifteen John Doe Defendants, in addition to Defendant Hubner, are liable for their conduct during the February 16, 2021 incident. (*Id*. at PageID 131.)

### 2. February 17, 2021 Incident (humiliating treatment)

The next day, an unidentified correctional officer chained Plaintiff to a table in the dayroom that was directly in front of a camera. (Doc. No. 11, PageID 123-24.) Plaintiff alleges that he was placed there so that the officers who assaulted him could see his injuries, including his right eye being swollen shut, and laugh at him. (*Id*.) Plaintiff also alleges that he was placed there so that other inmates could laugh at him. (*Id*.)

### 3. February 24, 2021 Incident (attack by inmate)

A few days later, Plaintiff was moved to another cell for the purpose of allowing him to be attacked by another inmate. (Doc. No. 11, PageID 124.) Although the cell was empty when Plaintiff arrived, "several moments later some muscle-bound inmate" was brought into the cell and uncuffed. (*Id*.) The other inmate knocked Plaintiff onto the ground and stomped on him several times. (*Id*.) Plaintiff yelled for help and saw two correctional officers standing outside of his cell, laughing. (*Id*.) The officers did not break up the fight and instead appeared to be amused. (*Id*. at PageID 124-25.) Plaintiff alleges

10

that the officers bribed the inmate to attack Plaintiff with the promise of cigarettes. (*Id.*) One of the officers also mocked Plaintiff's calls for help by uttering "his own mock version of a plead for help." (*Id.*) Ultimately, the officers opened the cell door, sprayed Plaintiff with mace, and escorted him and the other inmate to the infirmary. (*Id.*)

### 4. May 2021 Parole Board Hearing

A few months later, during Plaintiff's Parole Board hearing in May 2021, he was asked: "You are still showing signs of aggression, so why should we consider letting you go?" (Doc. No. 11, PageID 125-26.) Plaintiff responded: "How can you call me showing signs of aggression, from an incident – where the police beat me?" (*Id.* at PageID 126.) On June 14, 2021, the Parole Board denied Plaintiff's request for parole and extended his eligibility for ten years. (*Id.*)

### 5. June 23, 2021 Incident (False Statement About Release)

On June 23, 2021, Plaintiff (who did not yet know about the Parole Board's decision) was summoned to the Identification Department. (Doc. No. 11, PageID 126.) An unnamed official told Plaintiff that an employee of the Adult Parole Authority, Ms. Shrine, had stated that Plaintiff needed to have a "Release I.D." (*Id.*) Believing that he was about to be released, Plaintiff was overjoyed. (*Id.*) The next day, however, he was summoned to the Mental Health Department and was informed that Ms. Shrine had called to say that Plaintiff's request for parole was denied. (*Id.*) Plaintiff received the official decision by mail a few days later, and realized that he had been tricked. (*Id.*)

### C. Plaintiff's Claims

Plaintiff describes his claims as follows:

11

>Police Brutality; Excessive Force; and Unnecessary and the Wanton Infliction of Pain, in Violation of the Plaintiff's Substantial Right to be Free of "Cruel and Unusual Punishment," Guaranteed by the 8th Amendment of the United States Constitution; 42 U.S.C. § 2000dd; and, The Constitutional Rights of Prisoners § 1-3.1; and §§ 1-11.6.4.

(Doc. No. 11, PageID 117 (as in original).) He also refers to his claims as psychological torture, a misuse of state power, and deliberate indifference. (*Id*. at PageID 105.)

### D. Misjoinder of Unrelated Defendants

The undersigned notes that Plaintiff is attempting to sue numerous Defendants (all but one of whom are John Doe Defendants) in one lawsuit for conduct that occurred in separate incidents. As explained below, the Federal Rules of Civil Procedure do not permit Plaintiff to sue unrelated Defendants in one lawsuit. Therefore, the undersigned **RECOMMENDS** that the District Judge drop from this lawsuit all John Doe Defendants who were not involved in the February 16, 2021 incident. Plaintiff may, if he wishes, file one or more additional lawsuits to address those incidents and Defendants.

Federal Rule of Civil Procedure 18(a) allows a plaintiff to "join, as independent or alternative claims, as many claims . . . as the party has against an opposing party." Fed. R. Civ. P. 18(a). Therefore, Plaintiff is permitted to assert multiple claims, even claims that are based upon different and unrelated facts, against a single defendant.

But if Plaintiff seeks to sue multiple defendants, then he must comply with Federal Rule of Civil Procedure 20(a). Rule 20(a)(2) allows multiple defendants to be sued in one action "if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants

12

will arise in the action." Fed. R. Civ. P. 20(a)(2)(A) & (B) (emphasis added). The Sixth Circuit has explained that "[i]f the same issues of fact would determine both claims, they arise out of the same transaction or occurrence, but if the proof of one claim would have no connection with the proof of the other, the claims do not arise out of the same transaction or occurrence." *LASA Per L'Industria Del Marmo Societa Per Azioni of Lasa v. Alexander*, 414 F.2d 143, 151 (6th Cir. 1969) (internal quotations and citation omitted).

Here, Plaintiff's allegations show that he is suing an unknown number of Defendants based upon ***different*** "transaction[s], occurrence[s], or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A). Although there may be common theme—for example, the alleged targeting of Plaintiff by officials of Madison CI—Plaintiff's causes of action involve different facts, different Defendants, and different proof. The existence of a common theme does not satisfy the requirements of Rule 20(a)(2).

Accordingly, because Plaintiff's causes of action are not based upon the "same transaction, occurrence, or series of transactions or occurrences," Rule 20(a)(2) does not permit Plaintiff to sue all of these Defendants in one lawsuit. *Perry v. Erdos*, No. 1:22-CV-178, 2023 WL 2781585, at *2 (S.D. Ohio Apr. 5, 2023), *report and recommendation adopted,* No. 1:22-CV-178, 2023 WL 6370421 (S.D. Ohio Sept. 30, 2023) (explaining that under Rule 20(a)(2) a plaintiff cannot "combine into one lawsuit unrelated claims against different defendants" (internal quotations and citation omitted)).

Furthermore, when cases are filed by prison inmates, the Prison Litigation Reform Act ("PLRA") requires them to pay the required filing fees (albeit over time) and imposes a three-strike rule to deter frivolous lawsuits. Courts therefore require prison inmates to

13

bring separate lawsuits when asserting unrelated claims against different defendants, so that they cannot sidestep these requirements of the PLRA. *See, e.g., George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Brown v. Blaine*, 185 F. App'x 166, 168-69 (3d Cir. 2006).

For all of these reasons, the Court concludes that Defendants are misjoined under the Federal Rules of Civil Procedure. The remedy for misjoinder is set forth in Federal Rule of Civil Procedure 21, which permits the Court "on its own . . . at any time, on just terms, [to] add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. Here, because Plaintiff's primary claim appears to involve the February 16, 2021 incident, the undersigned **RECOMMENDS** that the District Judge drop from this lawsuit all John Doe Defendants who were not involved in the February 16, 2021 incident. Because it does not appear that Defendant Hubner was involved in any of the other incidents, it is unnecessary to sever any other claims asserted against him.

### III.  LAW AND ANALYSIS

#### A.  Claims That May Proceed at this Time

The Court construes prisoner claims that are based on the alleged use of excessive force and the unnecessary and wanton infliction of pain as arising under the Cruel and Unusual Punishments Clause of the Eighth Amendment to the U.S. Constitution. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (describing the evolving boundaries of the Eighth Amendment); *Murray v. Stockton*, No. 3:04-cv-501, 2007 WL 172521, at *4 (E.D. Tenn. Jan. 18, 2007) (noting that "police brutality" is "not [a] legitimate, recognized cause[] of action"). The undersigned therefore construes the Amended Complaint as asserting Eighth Amendment claims against Officer Hubner and the John Doe

14

Defendants involved in the February 16, 2021 incident. Plaintiff has properly asserted these Eighth Amendment claims under 42 U.S.C. § 1983 ("Section 1983").

At this time, without the benefit of an answer or other briefing, the undersigned **ORDERS** that Plaintiff be permitted to **PROCEED** with his Eighth Amendment claims under Section 1983 against Defendant Hubner and the John Doe Defendants involved in the February 16, 2021 incident in their individual capacities. The precise theories of Plaintiff's Eighth Amendment claims against these Defendants (e.g., excessive force, failure to protect or intervene, deliberate indifference to the need for medical care) can be determined at a later time. The undersigned expresses no opinion on the merits of Plaintiff's Eighth Amendment claims or whether he will ultimately obtain any relief.

### B. Claims Recommended For Dismissal

Golden also asserts claims under 42 U.S.C. § 1981, 42 U.S.C. § 2000dd, and "The Constitutional Rights of Prisoners." (Doc. No. 11, PageID 109-110.) Because none of these asserted claims are viable, the undersigned recommends that they be dismissed.

#### 1. Claims asserted under 42 U.S.C. § 1981

Section 1981 provides, in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). Section 1981 "prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors." *Amini v.*

*Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006). To plead and prove a claim under Section 1981, Plaintiff must establish that (1) he possesses a contractual right that defendant blocked or impaired, and (2) the defendant's act was motivated by racial discrimination. *Williams v. Richland Cnty. Children Servs.*, 489 F. App'x 848, 851 (6th Cir. 2012).

Plaintiff's Amended Complaint does not contain sufficient factual allegations to satisfy the required elements of a Section 1981 claim. Specifically, he has not identified any contractual rights, and he did not allege that racial discrimination caused Defendants to interfere with those contractual rights. Plaintiff therefore fails to state a claim under Section 1981 and all such claims should be dismissed.

### 2. Claims asserted under 42 U.S.C. § 2000dd

Section 2000dd provides that:

> No individual in the custody or under the physical control of the United States Government, regardless of nationality or physical location, shall be subject to cruel, inhuman, or degrading treatment or punishment.

42 U.S.C. § 2000dd. This statute does not apply to Plaintiff because the allegations in the Amended Complaint make it clear that he was in the custody of the State of Ohio, not the United States Government. (*E.g.*, Doc. No. 11, PageID 111 (asserting that Plaintiff filed a grievance and appeal with the Ohio Department of Rehabilitation & Correction) and PageID 116 (describing Plaintiff's state convictions and sentences); *see also* Doc. No. 4 at PageID 64 (indicating that Plaintiff was incarcerated at Ross Correctional Institution, an Ohio prison).) Plaintiff therefore fails to state a claim under Section 2000dd and all such claims should be dismissed.

### 3. Claims based on "The Constitutional Rights of Prisoners"

Finally, Plaintiff refers to sections of "The Constitutional Rights of Prisoners," which is apparently a textbook or treatise. (Doc. No. 11, PageID 117 (citing § 1-3.1 §§ 1-11.6.4 of that source).) Although this source may provide an explanation of the federal rights that are available to prisoners, it does not itself provide a basis for asserting those rights. Plaintiff must base his claims under the U.S. Constitution and Section 1983, not under any secondary source.

Accordingly, the undersigned **RECOMMENDS** that Plaintiff's claims under 42 U.S.C. § 1981, 42 U.S.C. § 2000dd, and "The Constitutional Rights of Prisoners" be **DISMISSED**.

### 4. Claims based on alleged judicial misconduct

In his Amended Complaint, Plaintiff describes other cases that he has filed. (Doc. No. 11, PageID 105-106, 111-116.) Plaintiff's intent appears to be to demonstrate that he has not accrued three "strikes" under the so-called "three strikes" provision of the PLRA. 28 U.S.C. 1915(g).

One case that Plaintiff describes is *Travis Golden v. Ohio Department of Rehab. and Corr., et al.*, S.D. Ohio Case No 2:22-cv-2125. (Doc. No. 11, PageID 112.) Plaintiff asserts that the judicial officers committed misconduct in that case and should have been reported to "Disciplinary Counsel." (*Id*. at PageID 113-114.) Plaintiff requests that the judicial officers in this case submit such a report. (*Id*. at PageID 114.)

To the extent that Plaintiff is attempting to assert a claim in this case that relates to the handling of S.D. Ohio Case No. 2:22-cv-2125, the undersigned **RECOMMENDS**

that such a claim be **DISMISSED**. Matters pertaining to Case No. 2:22-cv-02125 should be addressed in that case or raised on appeal. They will not be entertained in this case.

IV.     **SERVICE**

Because Plaintiff is proceeding *in forma pauperis* (Doc. No. 8), the Court will facilitate service of process on Defendant Hubner. 28 U.S.C. § 1915(d). However, Plaintiff has failed to provide a summons and U.S. Marshal form for service. It is therefore **ORDERED** that Plaintiff, **within (30) days** of the date of this Order, shall submit a completed summons and U.S. Marshal form for service on Defendant Hubner. Once the Court receives the summons and U.S. Marshal form, the Court will order service of process by the United States Marshal.

V.      **CONCLUSION**

**IT IS THEREFORE ORDERED THAT:**

1.      Plaintiff shall be permitted to **PROCEED** with his Eighth Amendment claims against Defendant Hubner and the John Doe Defendants involved in the February 16, 2021 incident in their individual capacities.

2.      Plaintiff, **within (30) days** of the date of this Order, shall submit a completed summons and U.S. Marshal form for service on Defendant Hubner. Once the Court receives the summons and U.S. Marshal form, the Court will order service of process by the United States Marshal.

**IT IS THEREFORE RECOMMENDED THAT:**

1.      The Court **DROP** from this lawsuit all John Doe Defendants who were not involved in the February 16, 2021 incident, due to misjoinder.

2.     Plaintiff's claims under 42 U.S.C. § 1981, 42 U.S.C. § 2000dd, and "The Constitutional Rights of Prisoners" be **DISMISSED**.

3.     Any claim in this case that relates to the handling of S.D. Ohio Case No. 2:22-cv-2125 be **DISMISSED**.

4.     The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith, and therefore deny Plaintiff leave to appeal *in forma pauperis*. See *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

### DIRECTIONS TO THE CLERK:

1.     The Clerk of Court is directed to list Correctional Officer Hubner on the docket as the lead defendant, remove his designation as a "Doe" Defendant, and add fifteen "John Doe" Defendants to the docket.

2.     The Clerk of Court is directed to note on the docket that Defendant Hubner and the John Doe Defendants are being sued in their individual capacities.

3.     The Clerk of Court is directed to send Plaintiff, along with a copy of this Order and R&R: one blank summons form, one blank USM-285 form, a print-out of the docket sheet of this case as corrected herein, and a copy of the Court's Pro Se Handbook.

Plaintiff may file Objections to this Report and Recommendation in the manner described below. He is **ADVISED** that he must keep this Court informed of his current address while this case is pending and promptly file a Notice of New Address if he is transferred or released.

**IT IS SO ORDERED AND RECOMMENDED.**

<u>s/ Caroline H. Gentry</u><br>
Caroline H. Gentry<br>
UNITED STATES MAGISTRATE JUDGE

**Procedure on Objections to Report and Recommendation**

If any party objects to this Report and Recommendation, that party may, **within fourteen (14) days** of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).