**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TRAVIS GOLDEN,<br><br>Plaintiff,<br><br>vs.<br><br>CORRECTIONAL OFFICER HUBNER, *et al.*,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No. 2:23-cv-00637<br><br>District Judge Michael H. Watson<br>Magistrate Judge Caroline H. Gentry |

# REPORT AND RECOMMENDATION

Plaintiff Travis Golden, an Ohio inmate who is proceeding without the assistance of counsel, filed this civil rights action under 42 U.S.C. § 1983 against Correctional Officer Allen Hubner and several John Doe Defendants. After screening Plaintiff's Amended Complaint, this Court allowed him to proceed with his Eighth Amendment claims against Hubner and the John Doe Defendants involved in an alleged use of force incident that occurred at the Madison Correctional Institution ("MaCI") on February 16, 2021. (Doc. Nos. 12 & 18.) The Court dismissed Plaintiff's remaining claims. (*Id.*)

This matter has been referred to the undersigned Magistrate Judge to issue a Report and Recommendation on Defendant Hubner's Motion for Summary Judgment (Doc. No. 38), to which Plaintiff did not file a response. For the reasons set forth below, the undersigned **RECOMMENDS** that the Motion be **GRANTED** in its entirety and that Plaintiff's claims against Defendant Hubner be **DISMISSED WITH PREJUDICE.** In addition, because Plaintiff did not timely identify and serve the John Doe Defendants, the

undersigned Magistrate Judge **RECOMMENDS** that the District Judge **DISMISS WITHOUT PREJUDICE** all remaining claims in Plaintiff's Amended Complaint and **TERMINATE** this case on the Court's docket.

## I. STATEMENT OF FACTS

Defendant Hubner supported his Motion for Summary Judgment with various evidentiary materials that were authenticated by a Declaration from Corrections Warden Assistant 2 Kelly Blakeman (Doc. No. 38-1). The facts below are taken from these materials, which include a video recording of the use of force incident,[1] investigative reports and related documents, and Plaintiff's medical records.[2]

This lawsuit arises from an incident that occurred on February 16, 2021, in the Washington Delta Unit of the MaCI. (Investigative Summary Report ("ISR"), Doc. No. 38-2 at PageID 289.) At around 10:30 a.m., Defendant Hubner and his partner, Officer Rittgers, were "closing the dayroom for 11:00 am institutional count." (Hubner Use of Force Report, Doc. No. 38-2 at PageID 306; Rittgers Use of Force Report, Doc. No. 38-2 at PageID 300.) Hubner explains that "[b]efore the 11:00 a.m. count takes place, dayrooms in housing units are closed, and all incarcerated persons are required to report

[1] Defendant Hubner was granted permission to file the video recording of this incident (*see* Doc. Nos. 36 & 37) and submitted a flash drive labeled "2-16-21 WD GOLDEN" to the Clerk of Court on November 5, 2025. According to its timestamp, the video recording runs from approximately 10:33 a.m. to 10:37 a.m. on February 16, 2021. All citations to "Video at __ [timestamp]" refer to this video recording that was authenticated and submitted in support of Defendant Hubner's Motion for Summary Judgment. (*See* Blakeman Declaration, Doc. No. 38-1 at PageID 287, ¶ 5.b.)

[2] Although Plaintiff did not respond to the Motion for Summary Judgment, he previously objected that the video recording was incomplete, altered and edited. (*See* Doc. No. 46 at PageID 451, 457-66.) Plaintiff also objected that the investigative reports were falsified. (*See* Doc. No. 29 at PageID 237.) The Court will address these objections later in this Report and Recommendation. Plaintiff did not otherwise object to the admissibility of Defendant's exhibits and has waived any such objections.

to their assigned cells to be counted." (Motion for Summary Judgment, Doc. No. 38 at PageID 269.)

Plaintiff Golden initially was in his cell but did not remain there. Instead, Plaintiff "came out of his cell and refused staff directives to go back into the cell." (ISR, Doc. No. 38-2 at PageID 292). Defendant Hubner reported that Plaintiff "forced his way out of his cell into the day room" and "was refusing directives to not force his way out of his cell." (Hubner Use of Force Report, Doc. No. 38-2 at PageID 306.) Officer Rittgers reported that he "witnessed [Plaintiff] barging out of his cell." (Rittgers Use of Force Report, Doc. No. 38-2 at PageID 300.) Plaintiff, for his part, stated that "he came out of his cell because CO Hubner stated he was going to beat him up." (Id. at PageID 290.)

The video of this incident, which does not contain accompanying audio, begins with Plaintiff Golden standing inside his cell and Defendant Hubner standing outside the door to the cell. (Video at 10:33:04.) The video then shows Hubner pushing against the cell door and struggling to close it, while Plaintiff simultaneously pushes the door open, eventually coming through the door into the dayroom. (*Id*. at 10:33:28-10:33:48.) At some point, Hubner "called officer needs assistance in Washington Delta" because Plaintiff "refused all directives to stop coming out of his cell." (Hubner Use of Force Report, Doc. No. 38-2 at PageID 306.)

The video shows Plaintiff exit his cell while bent forward and pushing a "locker box" across the floor ahead of him. (Video at 10:33:40-10:33:49; *see also* Rittgers Use of Force Report, Doc. No. 38-2 at PageID 300 (Plaintiff came "barging out of his cell on top of a locker box").) Plaintiff put one knee down and held onto the locker box with both

hands. (Video at 10:33:49-10:34:53.) Officer Rittgers "ran across the dayroom to where [Defendant Hubner] was" and "attempt[ed] to restrain [Plaintiff] with cuffs." (Rittgers Use of Force Report, Doc. No. 38-2 at PageID 300; *accord* Video at 10:33:44-10:34:00.) Plaintiff's torso descends toward the locker box, and after a moment, Plaintiff's wrists are behind his back. (Video at 10:33:56-10:34:14.) Defendant Hubner cuffs one wrist, and Hubner and Officer Rittgers struggle to cuff Plaintiff's other wrist. (*Id.*; *accord* Hubner Use of Force Report, Doc. No. 38-2 at PageID 306 ("Once inmate Golden was on the ground in the dayroom I Officer Hubner was trying to handcuff inmate Golden and he was actively resisting being put in handcuffs."); Rittgers Use of Force Report, Doc. No. 38-2 at PageID 300 ("I gained control of inmate [Golden's] wrists attempting to restrain him with cuffs in which he was non-compliant.").)

Several officers responded to Hubner's "officer needs assistance" call. (Video at 10:34:09-10:35:11; *see* ISR, Doc. No. 38-2 at PageID 289 (listing nine officers who "used force" and five individuals who witnessed the use of force).) These witnesses state that Plaintiff was repeatedly ordered to stop resisting and "cuff up" but did not comply:

- <u>Officer Huffman</u>: "Witnessed staff giving multiple directives to inmate Golden to stop resisting and cuff up. The inmate did not comply. I gave verbal directives to comply and cuff up."
- <u>Officer Welch</u>: "Inmate did not follow directives to place his hands behind his back. Secured inmate Golden's left arm that was cuffed and placed it behind his back. Gave verbal directives to the inmate to place his right arm behind his back. Inmate did not comply."

- Officer Rittgers: "Tried to gain control of inmate Golden's wrist to place him in hand cuffs. Inmate was non-compliant."
- Lieutenant Spohn: "Witnessed inmate Golden 410-118 resisting several officers in being cuffed. Gave verbal directives to inmate to cuff up and stop resisting. Inmate did not comply."
- Officer Massie: "Gave direct orders to inmate Golden 410-118 to give his wrist to the officers to cuff up. Inmate did not comply."
- Officer Hubner: "Inmate was resisting while trying to cuff him."
- Officer Myers: "Witnessed inmate Golden 410-118 on the ground being combative and resisting staff trying to cuff him. Gave multiple directives to the inmate to cuff up. Inmate did not comply."
- Officer Lockwood: "Secured an arm and gave the inmate several verbal directives to stop resisting. Inmate did not comply."
- Commissary Manager: "Heard multiple verbal commands given to inmate Golden 410-118 to give up his hands and cuff up."
- Officer Jolly: "Witnessed inmate Golden 410-118 face down on the ground in the unit struggling with officers."
- Officer Goodboe: "Witnessed several officer[s] on the ground with inmate Golden 410-118. Inmate was disobeying orders and struggling with the officers."

- Sergeant Goss: "Observed several staff members struggling with inmate Golden 410-118 on the ground trying to cuff him. Inmate disobeyed orders to cuff up given by staff."
- Officer Clark: "Observed Inmate Golden 410-118 physically resisting responding staff. Inmate was refusing to give up his hands to be cuffed."

(ISR, Doc. No. 38-2 at PageID 290-292; *accord* Wallace Use of Force Report, Doc. No. 38-2 at PageID 312 ("Inmate appeared to be kicking his feet and thrashing his body to avoid being cuffed.").)

The video confirms that officers struggled to place Plaintiff Golden in handcuffs. (Video at 10:34:10-10:35:55.) It also appears to show distinct uses of force, although these are not clearly visible. (*See, e.g.*, Video at 10:34:22 [presumed pepper spray used]; Video at 10:34:43 [presumed knee strikes].) The ISR summarizes the events and concludes as follows:

> [I]nmate Golden 410-118 came out of his cell and refused staff directives to go back into the cell on 2-16-2021 at 10:33 AM. Officer needs assistance call was called on the radio for the Washington Delta Unit. Responding staff gave verbal directives to inmate Golden to cuff up and comply. Inmate was face down on the ground and refused orders to cuff up. Responding [officers] utilized knee strikes and a closed fist [strike] to the bicep area trying to gain compliance[.] Inmate refused directives to cuff and OC pepper spray was utilized to the [inmate's] facial area. Once inmate Golden was cuffed and assisted to his feet he became dead weight. Staff used a quad carry to take inmate Golden out of the unit and placed him in the medical cart. Medical exam report showed the use of OC pepper spray to the facial region and no visible injuries to the torso, hands, or legs.

(Doc. No. 38-2 at PageID 292-293.)

Notably, officers *other than* Defendant Hubner reported using the types of force described above. Specifically, Officer Myers reported that he "[d]elivered knee strikes to inmate Golden's large muscle group" and "[g]ave a short burst of OC pepper spray to the inmate's facial area." (ISR, Doc. No. 38-2 at PageID 291.) Officer Huffman used "knee strikes to re-direct inmate Golden's arm into the direction of responding staff so that the final restraint could be applied." (Huffman Use of Force Report, Doc. No. 38-2 at PageID 296.) And Officer Lockwood "started to throw closed fist strikes to the bicep muscle region … to try and get compliance of his arm." (Lockwood Use of Force Report, Doc. No. 38-2 at PageID 310.)

Defendant Hubner reported that "[o]nce responding officers arrived we were able to get inmate Golden into handcuffs." (Hubner Use of Force Report, Doc. No. 38-2 at PageID 306.) After this was accomplished, Plaintiff Golden "went limp and was carried out the front door and placed onto the medical Gator in front of the dorm and then was taken to the infirmary." (Ginn Use of Force Report, Doc. No. 38-2 at PageID 314.) The video shows Plaintiff dragging both feet while officers carry him from the dayroom. (Video at 10:36:32-10:36:56.)

The "[m]edical exam report showed the use of OC pepper spray to [Plaintiff's] facial region and no visible injuries to the torso, hands, or legs." (ISR, Doc. No. 38-2 at PageID 293.) The examining nurse noted that Plaintiff was "[c]ombative" and "[r]efused to cooperate." (Nursing Medical Exam Report, Doc. No. 38-3 at PageID 426.) The medical exam report further noted:

> **Objective Physical Findings:** A&O X3. Speech is unclear and speaking random words. Refuses to stand on his own as he is actively kicking at staff and attempting to head butt them. Mild swelling noted to left eye with superficial abrasion, scant amount of blood present. Swelling to upper lip. Face slightly reddened with tears. Refuses to open eyes. Attempted to assess pt's mouth unsuccessful as he attempted to spit on me. No visible injuries to torso, hands, or legs.
>
> **Treatment administered:** Attempted to decontaminate- unable due to pt attempting to assault staff and uncooperative. Educated pt on s/s of distress to report. Educated on OC reactivation.

(*Id.*)

The responding officers reported their impressions and injuries after the incident. Officer Huffman reported that Plaintiff, who is "an able-bodied adult male standing at 5'9 and 230 lbs" (Huffman Use of Force Report, Doc. No. 38-2 at PageID 296), had "kicked [him] in the groin, [causing] severe pain in groin" (Huffman Medical Exam Report, Doc. No. 38-2 at PageID 297). Lieutenant Spohn reported that Plaintiff Golden "showed extreme physical strength in resisting multiple Officers." (Spohn Use of Force Report, Doc. No. 38-2 at PageID 302.) Officer Wallace stated that Plaintiff "appeared to be under the influence of an intoxicating substance." (Wallace Use of Force Report, Doc. No. 38-2 at PageID 312.) Similarly, Officer Rittgers stated that "Inmate Golden 410-118 barged out of his cell appearing to be under the influence of an unknown substance." (Rittgers Use of Force Report, Doc. No. 38-2 at PageID 300.)

## II. PROCEDURAL HISTORY

Plaintiff filed this lawsuit in February 2023 and filed the operative Amended Complaint in July 2023. (Doc. No. 11.) The Court allowed Plaintiff to proceed "with his Eighth Amendment claims under Section 1983 against Defendant Hubner and the John

Doe Defendants involved in the February 16, 2021 incident in their individual capacities." (Doc. No. 12 at PageID 175.) The Court summarized Plaintiff's allegations in the Amended Complaint as follows:

> Officer Hubner initiated a verbal altercation with Plaintiff. (Doc. No. 11, PageID 118.) The dispute "escalated to the point where [Hubner] decided to lock [Plaintiff] into his cell." (*Id.*) At some point, Plaintiff "took advantage of [an] opportunity to run out of his cell and surrender in a peaceful manner." (*Id.*) Plaintiff apparently then knelt or lay down on the ground. (*Id.*)
>
> Seeing Plaintiff outside of his cell, Officer Hubner called for backup, "got down on top of" Plaintiff, ordered him not to move, and had him "completely subdued." (Doc. No. 11, PageID 118.) However, Hubner did not handcuff Plaintiff. (*Id.*) Instead, Hubner saw that the other officers were not taking any action against Plaintiff and announced that "[Golden] is not getting out of here, without getting his ass beat." (*Id.*) Someone else then sprayed Plaintiff, who had been subdued, in the face with mace or pepper spray. (*Id.*) …
>
> Hubner remained seated on Plaintiff's back for at "least one full minute" while refusing to secure the handcuffs. (Doc. No. 11, PageID 119-20.) Plaintiff alleges that Hubner refused to handcuff him until other officers caused additional injuries. (*Id.*) … [A]n unnamed "Superior Officer" who had been watching the incident finally ordered Hubner to clasp the handcuffs around Plaintiff's wrists. (*Id.*)

(Report and Recommendation, Doc. No. 12 at PageID 168-169.)

The Court instructed Plaintiff to identify and serve the John Doe Defendants and informed him of the March 27, 2025 deadline for doing so. (*See* Order Concerning "John Doe" Defendants, Doc. No. 21.) After that deadline passed without Plaintiff taking any action, the Court ordered him to show cause why the John Doe Defendants should not be dismissed. (Order to Show Cause, Doc. No. 24.)

Plaintiff then filed a Motion to Compel Discovery in which he requested production of video recordings and identities of the John Doe Defendants. (Doc. No. 25.) Following briefing on that motion and Defendant Hubner's provision of discovery materials (including showing the submitted video)[3] to Plaintiff, the Court denied the Motion to Compel as moot. (*See* Doc. Nos. 28, 29, 35, 41, 42, 43, 44, 45.) Later that same day, Plaintiff filed a document titled "Supplemental 'Objection' Reply by Travis Golden, the Plaintiff, to the Defendant's Supplemental Response to Plaintiff's Motion to Compel," which objects to the video that was shown to him. (Supplemental Objection, Doc. No. 46.) Plaintiff also previously objected to the written reports that were produced in discovery. The Court will address these objections below.

## III. PLAINTIFF'S SUPPLEMENTAL OBJECTION

In his Supplemental Objection, Plaintiff argues that the Court should strike the submitted video, enter a default judgment in his favor, order that the factual allegations in his Amended Complaint be taken as established, prohibit Defendants from presenting evidence, and hold Defendants in contempt. (Doc. No. 46 at PageID 455.) Plaintiff provides three reasons for requesting this relief.

<u>First</u>, Plaintiff asserts that he was not given a written "fair notice" of his opportunity to watch the video before it was shown to him on November 3, 2025, which

---

[3] It appears that most, if not all, of the evidentiary materials submitted in support of Hubner's Motion for Summary Judgment were Bates-stamped and provided in discovery to Plaintiff. (*See* Doc. No. 38-2, 38-3 [Bates-stamped between DRC000001 and DRC000142]; *see also* Doc. No. 28 ["Defendant is providing notice to the Court that he served Plaintiff his answers to Plaintiff's discovery requests and further served responsive documents to Plaintiff consisting of the Use of Force Report detailing the event that is the subject matter of this action and his medical records pertaining to the same."].)

caused him to be unprepared to take notes on the video. (Doc. No. 46 at PageID 453-455.) Plaintiff argues that Fed. R. Evid. 902(11), (12), and (13) entitled him to receive such a written notice. FRE 902(11) is titled "Evidence That Is Self-Authenticating" and provides, in relevant part:

> Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record—and must make the record and certification available for inspection—so that the party has a fair opportunity to challenge them.

Fed. R. Evid. 902(11). Rules 902(12) and 902(13) also refer to this notice requirement.

This argument is not well-taken. FRE 902 does not apply because the evidence relied on by Defendant Hubner is not self-authenticating. Instead, it is authenticated by the Declaration of Kelly Blakeman (Doc. No. 38-1 at PageID 287-288). Moreover, the "notice" described in FRE 902 refers to notice "of the intent to offer the record" at trial or a hearing. It does not require that notice be provided to a prisoner of the opportunity to view a video that is provided in discovery or submitted in support of a motion.

Second, Plaintiff asserts that the video is an evasive and incomplete discovery response because it does not reflect events that occurred eleven minutes earlier at 10:22 a.m., when Plaintiff was reportedly standing at the correctional officers' desk. (Doc. No. 46 at PageID 456.) Plaintiff asserts that he asked Defendant to produce a video containing his interaction with Defendant Hubner at the guard's desk in his discovery request. (*Id.*) However, neither Plaintiff's discovery letter (Doc. No. 25-1) nor his Motion to Compel (Doc. No. 25) request that specific information. Moreover, the submitted video captures the event that Plaintiff describes in his Amended Complaint.

Plaintiff also faults Defendant for not producing two additional videos of him while he was in transit to the medical area and while in the medical area. As an initial matter, some of this transit is captured at the end of the submitted video. More importantly, it is undisputed that officers *other than* Defendant Hubner were involved in those events. (*See, e.g.*, Hubner Use of Force Report, Doc. No. 38-2 at PageID 306 ("Once responding officers arrived we were able to get inmate Golden into handcuffs. *Responding officers* escorted inmate Golden out of unit. No further force used." (emphasis added))].) Because these videos depict individuals *other than* Defendant Hubner, they are not relevant to Defendant Hubner's Motion for Summary Judgment.

<u>Third</u>, Plaintiff asserts that the submitted video was altered and that "[a]ll of the Defendant(s)' acts of Excessive Force, and dereliction of duty, have been deleted" or edited out. (Doc. No. 46 at PageID 461.) He posits that if the full video was provided,

> this Court would … find that the evidence depicted by the video is so one-sided that the Plaintiff must prevail as a matter of law; and … that Defendants are not shielded by Qualified Immunity [because they knew] that continuing to mace, and punch, the Plaintiff when he … was not being disobedient violated his … substantive 8th Amendment rights right to be free of such cruel and unusual punishment, and, therefrom, they … are liable in their [individual capacities.]

(Doc. No. 46 at PageID 461-462.)

To support his argument, Plaintiff asserts that the video contains several "glitches" where "people in the video either move to a different location, or materialize, onto the scene without the video depicting them move from one location to another." (Doc. No. 46 at PageID 462.) Although Plaintiff lists two examples of these "subtle glitch[es]," neither one appears in the Court's review of the video. (*Compare* Doc. No. 46 at PageID 464-466

*with* Video.) Other than Plaintiff's assertion, nothing before the Court suggests that the video has been altered. To the contrary, the Blakeman Declaration asserts that the video is a "true and exact" copy of the record. (Doc. No. 38-1 at PageID 287, ¶¶ 4-5.)

In the interest of completeness, the undersigned notes that Plaintiff attached a Declaration to his Supplemental Objection. (*See* Doc. No. 46 at PageID 468.) In it, he makes the following statements under penalty of perjury:

> 1.) On 02/16/2021, I was unnecessarily assaulted by multiple guards, and I was sprayed with a whole canister of mace (after I had already been temporarily blinded by mace) (The guards responsible are lying to avoid being held liable).
>
> 2.) I never tried to fight the guards, while at Medical, the guards assaulted me, and then filed bogus reports to cover-up their misconduct and abuse of authority[.]
>
> 3.) The Doc. #37 video has been unconstitutionally altered to cover-up all of the Defendants assault, and it is not reliable (That's why there are glitches in the contents, and, then, the guards materialize out of thin air) (The editor used a "cut-and-paste" tactic to create the obstruction of justice it is – because if the real video was seen, then, the case would be so one-sided that the Plaintiff must prevail as a matter of law).
>
> 4.) The Defense did not disclose the videos of the assaults enroute to Medical, nor being dragged out unconscious – because there was no way to alter those videos[.]

(Doc. No. 46 at PageID 468 [cleaned up].)

To the extent that these statements consist of arguments, legal conclusions, or speculation that is not made on personal knowledge, the Court need not accept them. "Federal Rule of Civil Procedure 56(c)(4) requires that any declaration supporting a motion for summary judgment 'be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify

on the matters stated.'" *Nationwide Recovery, Inc. v. City of Detroit, Michigan*, 163 F.4th 977, 987 (6th Cir. 2026). Further:

> Personal knowledge is "gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said." *Personal Knowledge*, Black's Law Dictionary (12th ed. 2024). So statements based only on the affiant or declarant's *belief* don't satisfy these requirements and thus cannot be used to support a summary judgment motion. *Ondo*, 795 F.3d at 605; *see also* 10B *Wright & Miller's Federal Practice & Procedure* § 2738 (4th ed. 2016). But still, the district court has the discretion to "differentiate between knowledge and belief" for each part of the document and "should excuse the affiant's [or declarant's] stylistic error" when it decides that a statement stems from personal knowledge. *Ondo*, 795 F.3d at 605. So the inquiry doesn't hinge on the declarant's phrasing. Instead, the court looks to whether the substance of the declarant's statement is supported by personal knowledge and experience.

*Id*. at 987.

Here, notwithstanding Plaintiff's failure to respond to or oppose Defendant Hubner's Motion for Summary Judgment, the undersigned will nevertheless consider the four statements in Plaintiff's declaration that are made on personal knowledge: (1) that he was assaulted by multiple guards; (2) that he was sprayed with a whole canister of mace after already being blinded by mace; (3) that he never tried to fight the guards; and (4) while at Medical, guards assaulted him.

## IV. DEFENDANT HUBNER'S MOTION FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure permits parties to move for summary judgment on one or more claims or defenses in an action. Fed. R. Civ. P. 56(a). The Court "shall grant summary judgment if the movant shows that there is no ***genuine dispute*** as to any ***material fact*** and the movant is entitled to judgment as a matter of law."

*Id*. (emphasis added). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if its resolution "might affect the outcome of the suit under the governing law." *Id.*

If a party asserts that a fact cannot be disputed or, conversely, that it is genuinely disputed, then he must support that assertion with citations to evidentiary materials (e.g., depositions, documents, affidavits, declarations, stipulations, admissions or interrogatory answers). Fed. R. Civ. P. 56(c)(1)(A). A plaintiff's *pro se* status does not exempt him from his burden to provide such evidence. *Viergutz v. Lucent Techs.*, 375 F. App'x 482, 485 (6th Cir. 2010). "[A] prisoner's sworn affidavit, standing alone, may create a genuine dispute of material fact that forecloses summary judgment . . . even if the record lacks corroborating evidence." *Lamb v. Kendrick*, 52 F.4th 286, 296 (6th Cir. 2022); *see also Coopwood v. Wayne Cnty.*, 74 F.4th 416, 423 (6th Cir. 2023) ("[I]f the assertions in [the plaintiff's] sworn affidavit are true, they would at least create a dispute of fact …."). The Court is not required, however, to consider portions of affidavits or declarations that contain either inadmissible evidence or conclusions of law. Fed. R. Civ. P. 56(c)(4).

The party moving for summary judgment bears the initial burden of showing the absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party meets this burden when it shows that the lack of evidence supporting an essential element of the non-moving party's case is so significant that "no reasonable jury could find for the nonmoving party." *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 943 (6th Cir. 2022). However, when asserting qualified

immunity at the summary-judgment stage, a defendant is relieved of the threshold burden on that issue, and the plaintiff must instead affirmatively prove that the defendant *is not* subject to qualified immunity. *Fry v. Robinson*, 678 F. App'x 313, 318 (6th Cir. 2017).

If the moving party meets its initial burden, then the non-moving party cannot rest on its pleadings, but instead must point to admissible evidence that creates a genuine issue of material fact on each element of its claims or defenses. *Anderson*, 477 U.S. at 248-50; *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir. 1993). The non-moving party must show that more than "a mere scintilla of evidence" supports each such element. *CareToLive v. FDA*, 631 F.3d 336, 340 (6th Cir. 2011). If the non-moving party either "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

When ruling on a motion for summary judgment, the Court is required to draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court may not make credibility judgments or weigh the evidence. *Alsbaugh v. McConnell*, 643 F.3d 162, 168 (6th Cir. 2011). It also may not substitute its own judgment for that of a jury and decide the case on the merits. *Hanson v. Madison Cty. Det. Ctr.*, 736 F. App'x 521, 527 (6th Cir. 2018). Instead, the Court's role is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury" at all, or whether the case "is so one-sided that the moving party must prevail as a matter of law." *Id*. (internal citations omitted).

Although the Court is only required to consider the materials cited by the parties, it may also consider other evidentiary materials in the record. Fed. R. Civ. P. 56(c)(3). But the Court "has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin Cty. Bd. of Comm'rs*, 637 F. Supp. 2d 561, 576 (S.D. Ohio 2009).

**B. Standard for Eighth Amendment Excessive Force Claims**

Because Plaintiff is a convicted prisoner, his excessive force claim must be considered under the Eighth Amendment to the U.S. Constitution. *Pelfrey v. Chambers*, 43 F.3d 1034, 1036-37 (6th Cir. 1995). "The Eighth Amendment prohibits the imposition of 'cruel and unusual punishments' upon prisoners." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting U.S. Const. amend. VIII)). "But not every shove or restraint gives rise to a constitutional violation." *Id*. (quoting *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986)). The need to maintain security and discipline may require prison officials to use physical force that would be actionable as an assault under the common law. *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995). "Because prison officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance, we must grant them wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Combs v. Wilkinson*, 315 F.3d 548 (6th Cir. 2002). Nevertheless, prison officials may not inflict "unnecessary and wanton" pain on prisoners. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011).

An Eighth Amendment excessive force claim has both a subjective and an objective component. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014). The subjective component of an Eighth Amendment excessive force claim evaluates "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. The Court must consider: (1) the need for the use of force; (2) the relationship between that need and the type and amount of the force used; (3) the threat reasonably perceived by the official; and (4) the extent of the injury inflicted. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Whitley*, 475 U.S. at 320.

The objective component of an Eighth Amendment excessive force claim requires that a plaintiff's injury or pain be "sufficiently serious" to offend "contemporary standards of decency." *Cordell* 859 F.3d at 580. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (quoting *Hudson*, 503 U.S. at 9-10). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id*. At the same time, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Hudson*, 503 U.S. at 4; *see Wilkins*, 559 U.S. at 38 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").

### C. Standard for Eighth Amendment Failure-To-Intervene Claims

It is well-established that a law enforcement officer "can be liable under Section 1983 when by his inaction he fails to perform a statutorily imposed duty to enforce the laws equally and fairly." *Smith v. Ross*, 482 F.2d 33, 36-37 (6th Cir. 1973). Otherwise stated, "officers must affirmatively intervene to prevent other officers from violating an individual's constitutional rights." *Jacobs v. Village of Ottawa Hills*, 5 F. App'x 390 (6th Cir. 2001) (citing *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982). For example, an officer who "observes or has reason to know … that excessive force is being used" may be held liable for failing to intervene. *Id*. (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). However, without proof of an underlying constitutional violation, the plaintiff cannot establish a failure-to-intervene claim. *Adams v. Lexington-Fayette Urb. Cnty. Gov't*, 154 F.4th 501, 512 (6th Cir. 2025).

### D. Qualified Immunity

The doctrine of qualified immunity "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 58, 664 (2012). The purpose of qualified immunity is to provide governmental officials with the ability "reasonably [to] anticipate when their conduct may give rise to liability for damages." *Davis v. Scherer*, 468 U.S. 183 (1984); *see Guptill v. City of Chattanooga*, 160 F.4th 768, 781 (6th Cir. 2025) ("The goal is to ensure officers have a fair and clear warning that certain conduct violates the law"). "When properly applied, [it] protects all

but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotations and citation omitted).

To decide whether an official is entitled to qualified immunity, the Court must determine whether the alleged conduct violated a constitutional right and, if so, whether that right was clearly established. *Jones v. Clark Cty.*, 959 F.3d 748, 766 (6th Cir. 2020). The Court may consider these questions in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

A constitutional right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle*, 566 U.S. at 664 (internal quotations and citation omitted). To determine whether a right is clearly established, this Court "look[s] first to decisions of the Supreme Court, then to" decisions of the Sixth Circuit Court of Appeals, and in limited circumstances the decisions of other federal appellate courts. *Guptill*, 160 F.4th at 781. Clearly established rights must not be defined at a high level of generality. *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotations and citations omitted). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotations and citation omitted) (emphasis in original). "But where actions are so obviously contradicted by the law, then officers may have notice that their conduct violates clearly established law 'even in novel factual circumstances.'" *Id*. (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

Although qualified immunity is an affirmative defense, "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity." *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). "The defendant bears the initial burden of coming forward with facts to suggest that he acted within the scope of his discretionary authority …." *Id*. "Thereafter, the burden shifts to the plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct." *Id.* The Court is required to believe the admissible evidence cited by the plaintiff and draw all justifiable inferences in his favor. *Tolan v. Cotton*, 572 U.S. 650, 660 (2014). The Court must separately consider each defendant's liability and entitlement to qualified immunity. *Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 570 (6th Cir. 2013).

**E. Defendant Hubner is Entitled to Qualified Immunity**

Defendant Hubner has invoked the doctrine of qualified immunity as a defense. (Doc. No. 38 at PageID# 281-83.) As noted above, once a defendant has invoked and supported this defense, the burden shifts to the plaintiff to prove that the defendant is not entitled to qualified immunity. *Gardenhire*, 205 F.3d at 311.

Based upon the materials attached to the Motion for Summary Judgment, the undersigned finds that Defendant Hubner met his initial burden of providing evidence that he "acted within the scope of [his] discretionary authority during the incident in question." *Gardenhire*, 205 F.3d at 311. The burden then shifted to Plaintiff to point to

evidence and case law that creates a genuine dispute of material fact regarding whether Defendant violated his clearly established rights. *Id*.

Because Plaintiff did not respond to Defendant's Motion for Summary Judgment, he did not meet this burden. Defendant Hubner is therefore entitled to summary judgment based upon qualified immunity. *See Paul v. Whitley Cty.*, No. 24-5142, 2024 WL 4362260, 2024 U.S. App. LEXIS 24661, at *4-5 (6th Cir. Sept. 30. 2024) ("[T]he district correctly found that Paul forfeited the issue of qualified immunity by failing to respond to Philpot's assertion of the defense.") (citing *Doe v. Board of Regents of Univ. of Mich.*, No. 22-2095, 2023 WL 5095799, 2023 U.S. App. LEXIS 20969 (6th Cir. Aug. 9, 2023) (affirming the grant of qualified immunity because the plaintiff "failed to make any argument in the district court that the individual defendants were not protected by qualified immunity" and thus "had forfeited the issue") and *Brown v. U.S.*, 545 F. App'x 435, 437-38 (6th Cir. 2013) (affirming award of summary judgment to defendants based upon qualified immunity where the plaintiff's "arguments opposing summary judgment lacked the specificity to meet th[e] standard" for overcoming the defense.")).

Accordingly, the undersigned **RECOMMENDS** that Defendant Hubner's Motion for Summary Judgment (Doc. No. 38) be **GRANTED** based upon qualified immunity and that all claims against Defendant Hubner be **DISMISSED WITH PREJUDICE**.

## V. THE JOHN DOE DEFENDANTS

### A. Order to Show Cause Regarding the John Doe Defendants

On February 11, 2025, this Court issued an Order Concerning "John Doe" Defendants (Doc. No. 21). In that Order, the Court stated:

> The Court is unable to serve the unknown "John Doe" Defendants at this time. Once Plaintiff discovers their names, he shall file a "Supplement to Amended Complaint" that identifies them by name. He may file more than one Supplement as he learns these defendants' names in discovery.
>
> In addition, before service may be issued on any unknown defendant, Plaintiff must also file a "Motion to Issue Service" for that defendant. He must attach a completed U.S. Marshal form and a completed summons form for each defendant to be served. Plaintiff is **ADVISED** that no service will be issued on the unknown defendants unless he complies with this Order. He should not delay. *See generally* Fed. R. Civ. P. 4(m) (concerning time limits for service). The undersigned currently expects that service on the unknown defendants will be completed by **March 27, 2025.**

(Doc. No. 21 at PageID 198-99 (emphasis in original & footnote omitted.)

On June 26, 2025, this Court issued an Order to Show Cause Why John Doe Defendants Should Not Be Dismissed ("Order to Show Cause," Doc. No. 24). The Court stated that because it had allowed Plaintiff's claims against the John Doe Defendants to proceed on December 27, 2024, Plaintiff was required to identify and serve them within 90 days, which deadline had expired on March 27, 2025. (*Id*. at PageID 216-17 (citing Fed. R. Civ. P. 4(m).) Because Plaintiff had not filed the required Supplements to the Amended Complaint or Motions to Issue Service, the Court ordered him to show cause why the Court should not dismiss the John Doe Defendants. (*Id*.)

In response, Plaintiff offered three reasons for why the Court should excuse his failure to identify and serve these Defendants. First, Plaintiff asserts that because he was maced and blinded (by mace) during the incident, he does not know which correctional officers acted unlawfully, or whether their conduct was intentional or negligent. (Doc. No. 26 at PageID 226-27.) Second, Plaintiff argues that his lack of resources (as evidenced by his *in forma pauperis* status) has impeded his ability to investigate the

incident, conduct discovery, and pay for service of his filings. (*Id*. at PageID 227.) Third, Plaintiff argues that the lack of an attorney has prevented him from receiving initial disclosures under Fed. R. Civ. P. 26(a)(1)(A) and obtaining the video footage necessary to tell which officers took various actions. (*Id*. at PageID 228.)

In response, Defendant Hubner argues that because the incident occurred on February 16, 2021, the applicable statute of limitations bars all claims against the John Doe Defendants. (Doc. No. 30 at PageID 242-244.) Defendant Hubner also argues that Plaintiff should have acted sooner to determine the identity of the John Doe Defendants. (*Id*. at PageID 242.)[4]

In reply, Plaintiff reiterates that he was unable to identify the John Doe Defendants at the time of the incident because he was temporarily blinded by mace. (Doc. No. 31 at PageID 250-51.) He argues that because he is an inmate held in custody, he is not permitted to be given information about the identities of the John Doe Defendants. (*Id*. at PageID 251.) Finally, he argues that he must have an attorney appointed for him to assist him with identifying the John Doe Defendants. (*Id*.)

**B. Plaintiff's Prior Motion to Compel (Doc. No. 25)**

Before proceeding further, the Court notes that this issue (i.e., discovery of the identities of the John Doe Defendants) was raised in Plaintiff's Motion to Compel (Doc. No. 25), which Plaintiff filed shortly after the Court issued its Order to Show Cause.

[4] The parties also make procedural arguments, such as whether the Court's meet-and-confer requirement has been met. Because it is unnecessary to address these arguments, the Court declines to do so.

On January 12, 2026, the Court denied the Motion to Compel as moot (*see* Doc. No. 45). Relevant here, the Court noted that Defendant Hubner provided discovery—including video footage and several use of force reports from multiple officers—to Plaintiff by July 31, 2025. (Doc. No. 45 at PageID 448.) Plaintiff did not argue that the reports were redacted or illegible, or that he could not identify the authors of the reports. (*Id*.) He did, however, argue that the reports were "falsified" and he therefore "cannot utilize them to comply with this Court's ORDER to identify the remaining Doe Defendants." (*Id*. (quoting Doc. No. 29 at PageID 237-38.))

The Court construed Plaintiff's discovery request for the identities of the John Doe Defendants as an interrogatory and noted that parties may answer interrogatories by producing business records that contain the requested information. (Doc. No. 45 at PageID 449 (citing Fed. R. Civ. P. 33(d).) After concluding that "Plaintiff's request for the 'identities' of the John Doe Defendants … has been mooted by the production of the reports and the video footage," the Court denied the Motion to Compel as moot. (*Id*.)

**C. Law and Analysis**

It is axiomatic that all defendants to a lawsuit must be formally named in a complaint and served with process. *See* Fed. R. Civ. P. 10(a); Fed. R. Civ. P. 4. These requirements "go[] to the very heart of a court's ability to hear a case." *Jones v. Thomas*, No. 3:22-cv-167, 2022 WL 20489358, at *1 (M.D. Tenn. Oct. 31, 2022), *report and recommendation adopted*, 2023 WL 5122449 (M.D. Tenn. Aug. 9, 2023). Even *pro se* litigants must follow these rules. *See Benzaoual v. OhioHealth Corp.*, No. 2:19-cv-3366, 2021 WL 2712174, at *3 (S.D. Ohio July 1, 2021) (noting that a plaintiff's status as a *pro*

*se* litigant "does not discharge him from adhering to the requirements of the Federal Rules of Civil Procedure nor the Local Rules for this District.") (internal citations and quotations omitted). And naturally, "valid service of process requires knowledge of a defendant's identity." *Malibu Media, LLC v. Doe*, No. 3:14-cv-378, 2015 WL 1120063, at *2 (S.D. Ohio Mar. 12, 2015).

The undersigned concludes that Plaintiff has not shown good cause for his failure to identify and serve the John Doe Defendants. Plaintiff apparently did not seek to obtain the information from Defendant Hubner's counsel until May 15, 2025 (*see* Doc. No. 25-1), which was after the March 27, 2025 deadline. Then, after Plaintiff sought to compel production of the information, he took no action to identify the John Doe Defendants despite receiving video footage and multiple officers' reports in July 2025, all of which provided him with information about the identities of the John Doe Defendants. (Doc. No. 28.) Under the circumstances, Plaintiff has wholly failed to show good cause.

The Court notes that Plaintiff is the "master of his complaint" and is responsible for naming the parties whom he wishes to sue. *See Father Flanagan's Boys Home v. Donlon*, 449 F. Supp. 3d 739, 748 (S.D. Ohio 2020) ("A plaintiff is the master of his complaint, *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 407 (6th Cir. 2007), and can choose which party to sue.") Plaintiff cannot shift the responsibility to identify the John Doe Defendants named in his Amended Complaint to Defendant Hubner or his counsel. *See Harris v. Vantell*, No. 3:24-cv-00457, 2025 WL 726858, at *3 (M.D. Tenn. Mar. 6, 2025) (reminding a pro se, *in forma pauperis* plaintiff "that the ultimate responsibility for identifying John Doe and his correct service address rests with him.").

For all of these reasons, the undersigned concludes that Plaintiff has not shown good cause for failing to identify and serve the John Doe Defendants. Accordingly, the undersigned **RECOMMENDS** that the District Judge **DISMISS** Plaintiff's claims against the John Doe Defendants. *See Searcy v. Cnty. of Oakland*, 735 F. Supp. 2d 759, 771 (E.D. Mich. 2010) (dismissing John Doe defendants under Rule 4(m) after plaintiff failed to identify and serve them); *Dudley El v. Makowski*, No. 14-11927, 2017 WL 9472882, at *2 (E.D. Mich. Aug. 11, 2017), *report and recommendation adopted sub nom. El v. Makowski*, No. 14-11927, 2017 WL 4296600 (E.D. Mich. Sept. 28, 2017), *aff'd sub nom. Dudley El v. Michigan Dep't of Corr.*, No. 17-2288, 2018 WL 5310761 (6th Cir. May 23, 2018) ("Failure to identify and serve Doe defendants (or provide names and addresses for these defendants to the U.S. Marshals Service to permit it to effectuate service), constitutes failure to prosecute and warrants a dismissal of this case under both Rules 4(m) and 41(b).").

## VI. CONCLUSION

For the reasons stated, the undersigned **RECOMMENDS** that Defendant Hubner's Motion for Summary Judgment (Doc. No. 38) be **GRANTED** in its entirety and that all claims against Defendant Hubner be **DISMISSED WITH PREJUDICE**. In addition, the undersigned Magistrate Judge **RECOMMENDS** that the District Judge **DISMISS WITHOUT PREJUDICE** all remaining claims in Plaintiff's Amended Complaint and **TERMINATE** this case on the Court's docket.

The undersigned further **RECOMMENDS** that the Court **CERTIFY** that an appeal of any order adopting this Report and Recommendation would not be taken in

good faith and on that basis **DENY** Plaintiff leave to appeal *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Plaintiff may file objections to these recommendations as outlined in the section below. He is **REMINDED** that he must keep this Court informed of his current address while this case is pending and promptly file a Notice of New Address if he is released or transferred.

**IT IS SO RECOMMENDED.**

*s/ Caroline H. Gentry*
Caroline H. Gentry
UNITED STATES MAGISTRATE JUDGE

Procedure on Objections

If any party objects to this Report and Recommendation ("Report"), that party may, within fourteen (14) days of the date that this Report was filed, file and serve written objections to specific findings or recommendations along with supporting authority for the objection(s). Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter. A District Judge will then make a *de novo* determination of the portions of the report, findings, or recommendations to which objection is made. The District Judge may accept, reject, or modify, in whole or in part, this Court's findings or recommendations, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are advised that a failure to object to the Report will result in a waiver of a party's right (1) to have the District Judge review the Report *de novo* and (2) to appeal a decision of the District Court adopting the Report. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).